# Delaware River & Lancaster Railroad Company, Plff. in Err., *v.* Samuel N. Rowland.

An action by a railroad company to recover unpaid subscriptions to its stock may be defeated by proof that the company has abandoned the construction of its line.

The question whether, under the evidence, the company has abandoned the construction is for the jury.

In this case *held* that the evidence was properly submitted.

(Argued May 20, 1887.   Decided May 30, 1887.)

January Term, 1887, No. 132, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, and CLARK, JJ.   Error to the Common Pleas of Chester County to review a judgment on a verdict for the defendant in an action of assumpsit.   Affirmed.

NOTE.—For the presumption of abandonment from a failure to call for a subscription for more than six years, see Pittsburgh & C. R. Co. v. Byers, 32 Pa. 22, 72 Am. Dec. 770; McCully v. Pittsburgh & C. R. Co. 32 Pa. 25.   If there is a change in the location of the termini of the corporation's road as defined in its charter, the subscription is avoided (Manheim, P. & L. Turnp. Co. v. Arndt, 31 Pa. 317) ; or in its place of business (Auburn Bolt & Nut Works v. Shultz, 143 Pa. 256, 22 Atl. 904).

The facts as they appeared at the trial before FUTHEY, P. J., were stated in his charge to the jury, which was as follows:

This is an action brought by the Delaware River & Lancaster Railroad Company against Samuel N. Rowland, to recover a balance upon a subscription to its capital stock.

It appears by the evidence that on March 24, 1868, an act of assembly was passed incorporating the Delaware River & Lancaster Railroad Company, for the purpose of constructing a railroad "from a point on the Delaware river, at or near Point Pleasant in Bucks county, touching Phœnixville, to a point at or near Lancaster city, in Lancaster county;  .  .  .  *Provided,* That said company shall commence said road within two years from the passage of this act."

A supplement to that act was passed February 10, 1870, granting an extension of three years for the commencement of the road, making a period of five years, and covering the space of time from the date of the passage of the original act, to March 24, 1873.

Commissioners were appointed under the first act of assembly, for the purpose of obtaining subscriptions to the stock of the company, and performing such other duties as were necessary in the commencement of operations.

On June 18, 1868, prior to the organization of the company, the defendant subscribed for four shares of its capital stock.

On September 15, 1871, letters patent were issued to the company, and on October 12, 1871, the company was formally organized by the election of proper officers.

In 1872 another act of assembly was passed, which authorized the company "to locate, build, construct, and operate the said railroad by the most available route from a point on the Delaware river, at or near Point Pleasant, in Bucks county, to a point at or near Lancaster city, in Lancaster county, and to connect with any railroad now constructed, or that may at any time be constructed, at either end or at any intermediate point on the line or route thereof."

The act of assembly incorporating the company directed that the road should touch Phœnixville, authorizing its construction from the Delaware river, at or near Point Pleasant, in Bucks county, touching Phœnixville, to a point at or near Lancaster city.

The act of 1872, however, did not require the company to

construct the road "touching Phœnixville," but authorized its construction by the most available route from the Delaware river, at or near Point Pleasant, to a point at or near Lancaster city, connecting with other roads, etc.

In 1882, fourteen years after the passage of the original act of incorporation, and eleven years after letters patent had been issued, a call was made by the company for the payment of the subscriptions to the stock. Prior to that time there had been no call made; but at that time, by a resolution of the board of directors, a call was made for the payment of the subscriptions in ten installments of $5 per share, the par value being $50, extending from February 10, 1883, to November 15, 1883.

On September 10, 1883, the defendant paid $60 on account of his subscription of four shares, being three installments of $20 each. This payment was made about two months before the last installment fell due, and consequently after the date of the preceding eight installments.

[The defendant now declines to pay the balance of his subscription, on the ground that the company does not contemplate the construction of the road, and that in fact the project has been abandoned. This is the question for your determination, and if you find that the construction of the road has been abandoned, the defendant is entitled to your verdict.]

The charter was obtained in 1872, and, under the original act of assembly and its supplement taken together, five years was named as the period in which the construction of the road was to be commenced. In the winter of 1872–73 some grading was done on the property of Christian Mast, in the neighborhood of Springfield, under a verbal contract with George W. Crane, who testified that he worked there for about three months, grading a section of about 600 feet, when he was directed to cease the work; and since that time no further work in the way of grading has been done by the company.

It appears that this work was done before the expiration of the five years prescribed by the act of assembly for the commencement of the road. In considering the allegation of the defendant that the road has been abandoned, you will determine whether the work done by Mr. Crane, under the verbal contract, was a bona fide effort on the part of the company to construct the road, or whether the work was simply for the purpose of complying with the provisions of the charter, limiting the time of

its commencement, and was not afterwards followed by any other work.

In 1875 the company made a contract with Bush & Co., a firm in New York; but there has been no evidence given as to its terms, and it does not appear that any work was done in pursuance therewith.

On August 29, 1882, a contract was made with Layman, Walker & Co., of New York, about ten years after the first work was done on the road by Mr. Crane, under his verbal contract; but up to that time no other effort had been made toward its construction. Bush & Co. were to have been united in the contract with Layman, Walker & Co.; but they subsequently declined doing so, on the ground that they were strangers to them, and consequently the contract was made simply with Layman, Walker & Co.

It appears that Layman, Walker & Co. made some preparations for the carrying out of this contract, in the way of contracting for rails and locomotives, and the horses and carts were sent to a certain section of the road, but nothing visible to the eye was done towards the gradation of the road. The company afterwards became dissatisfied with the action of these contractors and the contract was finally canceled, since which time no further contract has been made by the company with any parties for the construction of the road, and, so far as practical results are concerned, the position of affairs remains to-day the same as it was when George W. Crane ceased the limited amount of grading he accomplished in 1873, in the vicinity of Springfield.

It was during the existence of the contract with Layman, Walker & Co. that the partial payment of his subscription to the stock of the company was made by the defendant, the date of the contract being August 29, 1882, and that of the payment September 10, 1883. The date of the rescission of the contract has not been given, but the evidence seems to indicate that it was after this payment by the defendant.

On March 1, 1873, the board of directors placed a mortgage of $2,000,000 upon the road; and bonds were issued amounting to $1,000,000. The plaintiff contends that, owing to the failure of Jay Cooke, and the unsettled condition of the monetary affairs of the country at that time, the bonds were not negotiated, but placed in the hands of the trustee in New York, where they

remained until 1882, a period of nine years, when they were hunted up and found in the garret of the trustee, who delivered them to the company.

On November 1, 1882, a new mortgage of $2,000,000 was placed on the road, and $1,000,000 of bonds issued, but never negotiated. It was in this year that the contract was made with Layman, Walker & Co. and that engineers were sent on the road for the purpose of revising the location between Phœnixville and Lancaster City. The line was first surveyed between these points in 1872–73; and from that time to 1882, no other survey or revision of the line appears to have been made.

It also appears that the company obtained some releases, or agreements to release, about the time the engineers were surveying the line in 1872–73. The officer of the company having the matter in charge followed them along the road, and when they announced its definite location, he called on the landowners in reference to obtaining the right of way and arranging the settlement of the damages, wherever it was practicable.

[I have thus briefly referred to the testimony bearing upon the question of the abandonment of the road, and whether the plaintiff intends in good faith to place it in operation. If you find that it does not intend to construct the road, as contemplated by the act of assembly, and has abandoned the enterprise, it is not entitled to your verdict.

The defendant subscribed to the stock of the company for the purpose of enabling it to construct the road; and if the project has been abandoned, there is no reason why he should be compelled to pay the balance of the subscription.] If, however, it is the purpose of the company to construct the road, and the project has not been abandoned, then the plaintiff is entitled to your verdict for the balance of the unpaid subscription, with the penalty added by the act of assembly for the nonpayment of subscriptions.

The assignments of error specified certain rulings upon the evidence and the portions of the charge inclosed in brackets.

*E. D. North, D. Smith Talbot,* and *William B. Waddell,* for plaintiff in error.—A subscription to the stock of a railroad company, under the act of February 19, 1849, made to the commissioners, before the organization of the company, upon condi-

tion that the road should be located on a special route, is to be deemed an absolute subscription, without reference to the condition. The commissioners have no power to receive any other than unconditional subscriptions; but such conditional subscription is not a nullity. It is the condition that is illegal; the subscription is single and absolute. Pittsburgh & S. R. Co. v. Biggar, 34 Pa. 455; Bavington v. Pittsburgh & S. R. Co. 34 Pa. 358; Boyd v. Peach Bottom R. Co. 90 Pa. 169; Pittsburg & S. R. Co. v. Woodrow, 3 Phila. 275.

The benefit which results to individual property by the incorporation of a company and location of a public road does not, in contemplation of law, enter into the consideration of the contract of subscription; and such subscriptions are necessarily subject to the power of the legislature to change the location of the road, where the contrary is not expressly stipulated. Irvin v. Susquehanna & P. Turnp. Road Co. 2 Penr. & W. 466, 23 Am. Dec. 53; Pierce, Railroads, 66.

The amendment of a charter, at the instance of the managers, will not affect the liability of a subscriber, to pay the amount subscribed for by him. Clark v. Monongahela Nav. Co. 10 Watts, 364; Cross v. Peach Bottom R. Co. 90 Pa. 392; Pierce, Railroads, 66, 70.

Every man is presumed to know the law (Real Estate Sav. Inst. v. Linder, 74 Pa. 371; Finnel v. Brew, 81 Pa. 362; Ege v. Koontz, 3 Pa. St. 109; Taylor v. Board of Health, 31 Pa. 73, 72 Am. Dec. 724); and it was immaterial whether the defendant did or did not know that the act of 1872 had been passed (Shaeffer v. Kreitzer, 6 Binn. 430; Delaware & H. Canal Co. v. Barnes, 31 Pa. 193; Pennsylvania R. Co. v. Butler, 57 Pa. 335).

Under the charge of the court below, the decision of the case turned wholly upon the question of the abandonment of the road. This could only have been put on the ground of analogy to the statute of limitations, or of a presumption to be drawn therefrom, because of delay in bringing the suit.

As no statute requires that, in cases where a creditor must make a demand before he can sue, the demand shall be made within six years from the date of the contract, or action be debarred, any rule exacting demand within that time can have no other basis upon which to rest than a presumption that the

debt has been paid, or the deposit withdrawn. Girard Bank v. Bank of Penn Twp. 39 Pa. 92, 80 Am. Dec. 507.

The statute of limitations begins to run on calls for install-ments to the capital stock of a railroad company from the time they are duly made. Redf. Railways, § 52, p. 81; Pierce Rail-roads, 77; Gibson v. Columbia & N. R. Turnp. & Bridge Co. 18 Ohio St. 396; Taggart v. West Maryland R. Co. 24 Md. 563; Western R. Co. v. Avery, 64 N. C. 491; Ross v. Lafayette & I. R. Co. 6 Ind. 297. See also Sinkler v. Indiana & E. Turnp. Road Co. 3 Penr. & W. 149; Howland v. Cuykendall, 40 Barb. 320: Smith v. Bell, 107 Pa. 352; Scovill v. Thayer, 105 U. S. 143, 26 L. ed. 968; Little v. Blunt, 9 Pick. 488; Picquet v. Cur-tis, 1 Sumn. 478, Fed. Cas. No. 11,131; Finkbone's Appeal, 86 Pa. 369; Girard Bank v. Bank of Penn Twp. 39 Pa. 92, 80 Am. Dec. 507.

Section 8 of the act of February 19, 1849, to the provisions of which this company is made subject, gives the directors of the company the power to determine when calls for installments shall be made, in conformity with the provisions of the said sec-tion; and no restriction is imposed as to the time within which such calls shall be made, and this is also the solemn agreement between the parties, as expressed in the defendant's subscription. By the provisions of said act, no action could have been brought against a subscriber to the stock for an installment due on his subscription, until after demand made as therein provided; nor could the stock have been forfeited to the use of the company on account of default of payment. The statute of limitations would, therefore, not begin to run against a subscription until after calls have been duly made in conformity with the require-ments of the act.

But in Pittsburgh & C. R. Co. v. Byers, 32 Pa. 22, 72 Am. Dec. 770; McCully v. Pittsburgh & C. R. Co. 32 Pa. 25, and Pittsburgh & C. R. Co. v. Graham, 36 Pa. 77, it is said that al-though the statute of limitations does not begin to run against a subscription to the stock of a railroad company until after calls are made for installments, yet where no calls are made for more than six years from the date of the subscription, the law will presume an abandonment of the contract and, from analogy to the statute, bar the recovery, unless the delay be accounted for.

Under the peculiar facts and the charter in these cases it was held that no call having been made within six years, and the

delay not being satisfactorily accounted for, by analogy to the statute of limitations the right to call, after that, was barred, and consequently no recovery could be had thereafter against the plea of the statute. Yet, in Pittsburgh & C. R. Co. v. Plummer, 37 Pa. 413, this principle was not applied, and the plaintiff was allowed to recover, notwithstanding the plea of the statute of limitations, on the ground that the defendant had tacitly recognized his subscription within six years.

In Finkbone's Appeal, 86 Pa. 368, the court intimates that the doctrine announced in Laforge v. Jayne, 9 Pa. 410, which was cited and relied upon by the court in Pittsburgh & C. R. Co. v. Byers, 32 Pa. 22, 72 Am. Dec. 770, is overruled. See also Smith v. Bell, 107 Pa. 352.

There is no provision in the act of March 24, 1868 (P. L. 429), or any of its supplements, or in the act of February 11, 1849 (P. L. 79), to which the plaintiff company is subject, requiring demand to be made, or suit brought, within six years. The contract is under seal, and there is no statutory limitation of time within which suit must be brought on such a contract; but the law raises a presumption of payment, after the lapse of twenty years. By parity of reasoning, the same analogy would allow the demand to be made within the same length of time. The seal imports consideration, if any were necessary. The statute of limitations is a personal privilege, and may be waived by the defendant, and it must be specially pleaded, or it is waived. Chitty, Contr. 945 and note.

A defendant cannot avail himself of the statute, merely because the proceedings of the plaintiff show a case to which it might be applied. Chambers v. Chalmers, 4 Gill & J. 420, 23 Am. Dec. 572.

The action of ejectment is the exceptional case in which the statute of limitations may be set up under a plea of the general issue; but it required an act of assembly to establish this exception. Whenever a statute does not authorize it, an act of limitation, which is a bar to the action and does not touch the merits, cannot be put in under the general issue. Heath v. Page, 48 Pa. 142.

The same rules of presumption apply to corporations as to private persons. Bank of United States v. Dandridge, 12 Wheat. 70, 6 L. ed. 554.

The defendant has waived the statute by paying to the com-

pany the first three installments on his stock, amounting to the sum of $60, in cash, on September 10, 1883, under the calls of the company. This would bind him as upon a new subscription. This principle is recognized in McCully v. Pittsburgh & C. R. Co. 32 Pa. 33. See also Boyd v. Peach Bottom R. Co. 90 Pa. 169; Pittsburgh & C. R. Co. v. Stewart, 41 Pa. 54; Pittsburgh & C. R. Co. v. Plummer, 37 Pa. 413.

If the defendant had acted as commissioner or director, or participated in a stockholders' meeting, or performed any act recognizing his membership of the company, or tending to fasten liability on other subscribers, he should be held to the payment of his subscription, notwithstanding the failure of the commissioners to exact the payment required by law to make it valid and binding. Boyd v. Peach Bottom R. Co. 90 Pa. 172.

In a suit against a subscriber for a second installment, evidence that he had paid the first, on representations of a trustee that enough stock had been furnished to finish the building, was inadmissible to rebut the presumption that he had ratified his subscription by paying the installment. The defendant voted at meetings of stockholders, offered to sell his stock, and paid an installment, and this was held a ratification of his subscription. Craig v. Cumberland Valley State Normal School. 72 Pa. 46. See also Erie & W. Pl. Road Co. v. Brown, 25 Pa. 156; Everhart v. West Chester & P. R. Co. 28 Pa. 339; Bedford R. Co. v. Bowser, 48 Pa. 29; Hanover Junction & S. R. Co. v. Grubb, 82 Pa. 36; Bavington v. Pittsburgh & S. R. Co. 34 Pa. 363.

A subscription to a joint stock is not only an undertaking to the company, but with all other subscribers, and, even if fraudulent as between the parties, is to be enforced for the benefit of the others in interest. Graff v. Pittsburgh & S. R. Co. 31 Pa. 489.

A part payment of a debt has always been held to take it out of the statute, the six years being counted from such payment. 2 Parsons, Contr. 353.

A payment on account of an existing debt is an unequivocal acknowledgment, and will take it out of the statute of limitations. Barclay's Appeal, 64 Pa. 69.

Under these circumstances the statute of limitations, or any presumption to be drawn from analogy, to the statute, cannot avail the defendant. There could be no abandonment without

an intention to abandon. To constitute abandonment there must be an actual relinquishment of possession. It is error to submit to the jury the question of abandonment when there is no relinquishment of possession. Miller v. Cresson, 5 Watts & S. 284.

Presumptions from evidence of the existence of particular facts are, in most cases, mixed questions of law and fact; and the court is not at liberty to tell the jury that they may draw such presumption, if the evidence is irrelevant or insufficient. Bank of United States v. Corcoran, 2 Pet. 171, 7 L. ed. 368.

Where a state of facts could not be inferred on a demurrer to evidence, it is error to submit it to the jury as possible, thereby affording a reconciliation of contradictory testimony. Haines v. Stouffer, 10 Pa. 363.

The evidence shows that the company is indebted for right of way; and while there are debts, abandonment alone would constitute no defense to a suit for a subscription to the capital stock of the company.

The abandonment of the construction of a railroad does not, of itself, constitute a defense to a suit to recover debts due the company. While the corporate organization remains, it may collect dues in its corporate name for the payment of debts. Hardy v. Merriweather, 14 Ind. 203; Bish v. Bradford, 17 Ind. 490; Lane's Appeal, 14 W. N. C. 197.

The jury should have been told that if they believed, from the evidence, that the delay in calling in installments was satisfactorily accounted for, that fact would rebut the presumption of the abandonment of the road. There was evidence on that subject, and it should have been submitted to the jury.

If there was a material misdirection, the judgment will be reversed, even though no instructions were asked. Garrett v. Gonter, 42 Pa. 146, 82 Am. Dec. 498.

*Thomas & William Butler* and *Wm. Aug. Atlee,* for defendant in error.—The rule that a subscription made to railroad commissioners before organization of the company is necessarily unconditional cannot be doubted. The defendant made no attempt to show that any special understanding was held between him and the commissioners taking his subscription, or that he imposed any condition upon his subscription. As the plaintiff company argues, a man is presumed to know the law; and the

defendant as a matter of fact did know it.    He was fully aware that the act of 1868, in the light of, and under the terms of, which he subscribed, required on the part of the plaintiff in error certain things—among others, the construction of its road between Lancaster and Point Pleasant by way of Phœnixville. As the defendant testified, in most unequivocal terms, this route was the inducement to his subscription; and being required of the company at the time he subscribed, it was a material element in his contract, not a condition subjoined by assent of the commissioner.

If the company procures an act of assembly altering the termini of the road, the subscriptions are no longer binding. Manheim, P. & L. Turnp. Co. v. Arndt, 31 Pa. 317.

Whenever a power which the subscriber cannot control intervenes to alter a material point in his contract, without his assent, it works his release.    Caley v. Philadelphia & C. County R. Co. 80 Pa. 363.

All the authorities cited by the plaintiff in error upon this point are cases in which special agreements were made by a subscriber with a commissioner, and therefore have no bearing upon the case in hand, in which the defendant stands upon a condition embodied in the act of incorporation.

It is admitted by the plaintiff in error that the decision of this case turned wholly upon the question of the abandonment of the construction of the road.

The defendant's position on the trial of this case was that while the plaintiff in error had not passed any formal resolution to abandon the project, yet all the facts (that no contracts to construct the road had ever been made, or if made, were almost immediately revoked; that the few yards of grading done were not done under contract with intention to construct, but evidently to save forfeiture of the charter; that no real effort to do anything in connection with the road, except to attempt to keep the formal organization up by meeting and electing officers) showed conclusively that there was no intention of building the road and that it was abandoned.

Per Curiam:

We have examined the authorities cited by the counsel for the plaintiff and carefully considered their able and zealous arguments, yet we are not able to find any error in the record which

demands a reversal of this judgment. The evidence of abandonment of the road was sufficient to submit that fact to the jury.

Judgment affirmed.